UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Elizabeth Gebel,

                    Plaintiff,

    vs.                             MINUTE ORDER

Noble Welding & Manufacturing,
Inc., a domestic corporation,

                  Defendant.        Civ. No. 06-2557 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On February 1, 2007, the Court heard argument on the Defendant's Motion to Compel Discovery of Medical, Psychological, Mental Health, and Drug Treatment Records.  At the time of the Hearing, the Plaintiff appeared by Steven Andrew Smith, Esq., and the Defendant appeared by  Mary M. L. O'Brien, Esq.  For reasons which follow, we deny the Defendant's Motion.

This is an alleged sexual harassment lawsuit, under Title VII, and the Minnesota Human Rights Act, in which the Plaintiff alleges that, while she was employed by the Defendant, the Defendant's owner engaged in sexually offensive behavior.  In her Complaint the Plaintiff seeks, among other damages, compensation for "mental anguish, humiliation, and embarrassment." Complaint, Docket No. 1, at p. 5 ¶24, and

at p. 7 ¶33.  The Plaintiff characterizes her claim for damages as being of the "garden variety."  She intends to call no medical, psychological, psychiatric, or mental health counselors or nurses, but simply wants to testify as to her mental anguish which, she alleges, were caused by the Defendant's acts.  She further represents that, during any Trial, she will not make reference to any visit to a medical professional owing to her mental anguish, nor will she testify that she has been prescribed any medications for mental anguish.

While recognizing the long-standing practice of this, and of other Courts, to restrict the discovery of medical and health records to injuries that have been genuinely brought into controversy, see, e.g., <u>Tomlin v. Holecek</u>, 150 F.R.D. 628, 632 (D. Minn. 1993), and <u>O'Sullivan v. State of Minnesota</u>, 176 F.R.D. 325, 327 (D. Minn. 1997), the Defendant argues that the circumstances in this case are distinguish-able from those in the prior cases, thereby warranting a different result.  The Plaintiff disagrees.

In <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 118-19 (1964), "the Court concluded that the 'in controversy,' and the 'good cause' requirements of Rule 35, were not satisfied 'by mere conclusory allegations of the pleadings -- nor by mere relevance to the case -- but require an affirmative showing by the movant that each condition as to

- 2 -

which the examination is sought is really and genuinely in controversy and that good

cause exists for ordering each examination.'"[1]   O'Sullivan v. State of Minnesota,

supra at 327.   Here, as in O'Sullivan, the Complaint only contains "'bare and

boilerplate allegations of 'mental anguish,' [], and 'embarrassment and humiliation,'

[which] provide a legally insufficient basis for concluding that Plaintiff's mental

condition is 'genuinely in controversy,' or that 'good cause exists for ordering [the]

examination.'"   Id.

The Defendant maintains that the relevance of such medical records, here, is

demonstrated by the Plaintiff's contemporaneous consultation with mental health care

providers at the time she was complaining of, among other her stressors, the pressures

created by the alleged sexual harassment.   Further, the Defendant underscores that,

---

[1]As in other cases, we consider document requests for medical records under the rubric of Rule 35, Federal Rules of Civil Procedure.  As we explained, in Ulrich v. City of Crosby, 848 F. Supp. 861, 879 (D. Minn. 1994):

> While we recognize that the Plaintiff has not premised her discovery requests upon Rule 35 and, further, that the Rule expressly addresses the conduct of a medical examination, we are aware of no practical difference between the examination of medical records as distinct from the examination of the person to whom those records relate. More importantly, Rule 35 lends an instructive focus to our analysis.

during the Plaintiff's deposition, the Plaintiff disclosed that she has been treated for a bipolar disorder, and for a compulsive/obsessive disorder. Moreover, the Defendant predicates its request on its belief that the Plaintiff waived her medical privilege by talking to co-workers about the stressors in her life, and her consultation with mental health care professionals. Lastly, the Defendant maintains that access to the Plaintiff's medical records should be available if needed for impeachment purposes. We conclude that none of the stated factors, in the context of this case, warrants a result different from that reached in O'Sullivan.

As we stated during the course of the Hearing, the pleading forms, which are appended to the Federal Rules of Civil Procedure, reflect the boilerplate nature of the Plaintiff's claim for damages arising from "mental anguish, humiliation," and "embarrassment." Forms 9 and 14, which each pertain to negligence actions, include an allegation that the plaintiff "suffered great pain of body and mind." If such boilerplate were sufficient to constitute a mental injury, so as to permit an invasive assessment of the plaintiff's mental state, then most every case -- since the employment of such phraseology is near universal -- would implicate Rule 35 related discovery. Plaintiffs would be routinely required to complete batteries of psychological testing simply because they asserted a claim of mental anguish. The mere fact that

- 4 -

the Plaintiff may have consulted with doctors contemporaneously with her employment with the Defendant would only be relevant if the Plaintiff were intending to call those treating professionals, or forensic substitutes, to testify on her behalf, or to serve as corroboration for her claims of mental anguish.  Here, she has denied any such intent, and she will be held to that representation at Trial.

As for her diagnoses for a bipolar disorder, or for an obsessive/compulsive disorder, the simple fact is that the Plaintiff is not alleging that the Defendant caused those psychological insults, and has disclaimed any intent to seek damages on that basis.  Nor, in our view, can the physician/patient privilege be waived by the simple disclosure that the Plaintiff was consulting with health care professionals -- that remains an historic fact -- any more than a client who admits to having consulted an attorney, without more, can be said to have waived the attorney/client privilege.  If privileges were so readily pierced, we doubt that they could be considered privileges.  Similarly, a wide raft of information, otherwise privileged, could be helpful in impeaching a witness, or a party, but the impeaching potential fails to overcome, in and of itself, the privilege asserted.

As we reiterated at the Hearing, nothing in O'Sullivan prohibits the Defendant from inquiry into the other stressors in the Plaintiff's life, which could have an impact

on her claims of mental anguish.  Those are all legitimate subjects for the Jury's consideration, absent some other specific, and applicable objection.  <u>O'Sullivan</u> simply precludes discovery into a claim that has been renounced by the Plaintiff, and the Plaintiff is bound by that renunciation.

As we noted at the Hearing, if the Plaintiff had been involved in an automobile accident, and had specially limited her claims to an injured leg, we would not be persuaded that the Plaintiff should undergo a Rule 35 examination of her arm, simply because her arm was treated following her accident but has been disclaimed as an element of damages.  Indeed, it would be highly unlikely that any such examination would be sought, as its effect would be to expand the Plaintiff's claim for damages, and conversely the Defendant's exposure, beyond the limitations established by the Plaintiff.  Of course, discovery into psychological treatment frequently opens a verdant source of unpleasant, potentially offensive information that, unless linked to a specific psychological insult claimed by the plaintiff,  has no relevance to a generic, and nonspecific mental anguish claim.  The Jury's focus should be trained on those injuries that are in contest, and not those unpled injuries that an opposing party would hope to contest.

As we explained, in <u>Ulrich v. City of Crosby</u>, supra at 879, where we examined a plaintiff's request for the defendant's mental health records:

> If no more were needed to invade the privacy of one's medical or psychological records than the naming of that individual as a defendant in a legal proceeding, the physician-patient relationship would be unnecessarily impaired if not wholly contravened.  We see no practical distinction between the request that the [p]laintiff here makes and a request that [the defendant] * * * undergo a battery of psychological evaluations and tests in order to assess [his] proclivity to discriminate on gender grounds.

Whether cast as discovery from the plaintiff, or the defendant, we limit its scope to claims and defenses which have been pled, absent a showing of good cause for more expansive discovery, which has not been shown here.  See, <u>Rule 26(b)(1), Federal Rules of Civil Procedure</u>.  The parties, the Court, and the Jury, should only be presented with claims and defenses which have been pled, and where, as here, the Plaintiff claims no psychological or mental insult that was caused by the Defendant, those claims are not open to discovery or proof.

NOW, THEREFORE, It is --

- 7 -

ORDERED:

That the Defendant's Motion to Compel Discovery of Medical, Psychological,

Mental Health, and Drug Treatment Records [Docket No. 15] is DENIED.


BY THE COURT:


Dated:  February 2, 2007                    s/Raymond L. Erickson
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE